MONITOR PIPE AND STEEL COMPANY, ET AL., APPELLANTS, v. FLANIGAN WAREHOUSE COMPANY, ET AL., RESPONDENTS.

No. 3454

May 7, 1947.                                      180 P.2d 586.

See also 63 Nev. 449, 172 P.2d 846.

*Sidney Fox*, of Reno, for Appellant.

*Charles L. Richards*, of Reno, for Respondent Harry Cowden.

*Charles M. Merrill* and *John E. Robinson*, both of Reno, for Respondents Flanigan Warehouse Co. and Fred Shair.

## OPINION

By the Court, BADT, J.:

The parties will be referred to as they appeared in the court below. Plaintiff Jack Dill, doing business as Monitor Pipe and Steel Company, filed his complaint against Flanigan Warehouse Company and Fred Shair, its manager, claiming to be the owner and entitled to the possession of certain mining machinery of the value of $1,250, and asking for its return or the value thereof,

plus $500 damages for its alleged unlawful detention. He joined as a defendant Harry Cowden, alleging that the latter claimed title, but that such claim was without right. The Warehouse disclaimed and prayed that Dill and Cowden be required to interplead. An appropriate order was made. There followed some remarkable pleadings. Cowden answered, denied Dill's claim of title, and in a narrative of some fifteen hundred words tells of his relations with one Fred W. Kuenzel and the latter's associate Robert F. White, his growing interest in the "Kuenzel smelter patent process," his plans for building a "100-ton unit as a starting project to be known as 'United Mines and Metals Corporation,'" his acquisition of additional mining equipment and a lease upon an extensive iron deposit, his purchase of the property in question from one J. Patrick O'Brien and Flanigan Warehouse Company, the owners thereof, his payment of the full $1,250 as the purchase price thereof, his having the "receipt" or "bill" or "property" made "in the name of Fred W. Kuenzel because his company had a Government P-56 that would give them priorities to buy anything that would be needed to build the 100-ton unit plan," as Cowden knew he could not buy it otherwise; that Dill and the Monitor Pipe and Steel Company and others knew all this; that Kuenzel later got into financial straits, overindulged in liquor and tried to raise money by selling the said mining machinery that Cowden had bought, and that Cowden and Kuenzel had a falling out; that Dill's purported purchase of the $1,250 worth of machinery from Kuenzel for $300 was with full knowledge of Cowden's rights and Kuenzel's lack of ownership, "was a breach of trust on the part of those consummating the deal," and that Dill's action was "fraudulent and deceitful." Not to be outdone in narrative style, Dill filed an answer and cross-complaint alleging in detail his conversations with Kuenzel, quoting the precise words used by each, the dictating, preparing and executing of a bill of sale from Kuenzel to

Dill, Kuenzel's assurances of his ownership, his exhibiting and delivering his "bill of sale" from the Flanigan Warehouse Company, the payment of $300 by Dill to Kuenzel and the entire absence of any mention of the name of Harry Cowden at any time "during the said negotiations and transactions"; that later Dill received written notice of Cowden's claim of ownership, but that prior thereto he had no notice or knowledge of any kind. He denied fraud, denied damage, denied Cowden's ownership. The day before he filed this answer and cross-complaint Dill filed his demand, which had been served the same day, that Cowden furnish him with a bill of particulars showing all of Cowden's relations with Kuenzel "as said relationship concerns the said patent processes" and showing the names of persons, dates of transactions, acts of fraud or deceit, "a statement showing the nature of any trust obligation" from Dill to Cowden, etc. Nothing loath, Cowden particularized—down to the names of the mines, the official numbers of the patents, the nature of the rights evidenced thereby, the descriptions and prices of other mining equipment acquired, with such additional imposing names as the "Kuenzel Smelters," the "Kuenzel Gas Generator," the "Kuenzel Smelter Furnace," followed by further repetitions of everybody's knowledge that Cowden had put up the money and bought the machinery, and the fact that "all knew the exact story which resulted in a trust and confidence on the part of defendant Cowden."

Dill replied to Cowden's answer and cross-complaint, denied most of the affirmative matter pleaded, and proceeded to detail at great length all of the dickering and bargaining between him and Kuenzel with each precise offer and counteroffer starting at $800 till the deal was consummated at $300.

There were some motions and demurrers attacking these pleadings, but appellant does not assign as error any of the lower court's rulings thereon. Neither party

sought to eliminate from the pleadings of the other the long recitals of probative facts, or the extraneous, irrelevant, immaterial, and redundant matter. The case was tried to the court without a jury. J. Patrick O'Brien, Jack Dill, Fred Shair, Harry Cowden and R. F. White are shown by the court minutes in the bill of exceptions to have testified at the trial. Although the parties stipulated to the bill of exceptions and that it contained "the substance of the pleadings, evidence and testimony available relating to the point or points involved," the testimony of these witnesses (who included all of the parties) was never reduced to writing and is not found in the bill of exceptions. The deposition of Kuenzel was taken, and this is the only testimony in the record. Certain exhibits appear. The district court rendered its decision "and ordered that the plaintiff (Dill) take nothing by his complaint, and finds that Harry Cowden is sole owner of personal property in question, and plaintiff directed to deliver same immediately to Harry Cowden. * * * It was further ordered that Harry Cowden have judgment against plaintiff" for $560 damages, together with his costs. It made findings, in part, as follows:

"That the defendant, Harry Cowden, herein bought and paid for said property in controversy by and through his agent, Fred W. Kuenzel, taking a bill of sale for same in the name of said Kuenzel from the plaintiff, Monitor Pipe and Steel Company, by Pat O'Brien, who was one of the owners at the time; that the plaintiff, Jack Dill, was aware of such agency and cognizant of the relation existing between the defendant, Harry Cowden, and Fred W. Kuenzel; that the plaintiff, Jack Dill, had reasonable notice of such relationship that by a subsequent purchase of said property by Dill from said Kuenzel gave him no title or interest therein; that by claiming a right to said personal property the plaintiff herein deprives the said defendant, Harry Cowden, herein from its use and benefit and a sale of same or a

portion thereof to the injury and damage of said Harry Cowden in the sum of $560.00."

Appropriate conclusions of law resulting from these findings were also made. The court denied Dill's motion to modify and add to the findings and conclusions. Judgment was entered on the findings to the effect that Cowden was the owner of and entitled to the possession of the personal property, with $560 damages for its detention, and costs. No motion for new trial was made, but Dill appealed from the judgment "and decision." The judgment was not in the alternative for the value of the property if a delivery could not be had, but appellant does not raise the point either in his briefs or oral argument. He frankly concedes that he is not in position to raise the point that the evidence does not justify the findings in the absence of a motion for a new trial and in the absence from the record of the testimony of the witnesses, but insists that the bill of exceptions indicates such errors in law as to entitle him to have the judgment reversed. The errors claimed are the following:

■ (1) It is first insisted that the findings do not conform to the issues made by the pleadings; that Cowden's allegations as to fraud and deceit and breach of trust indicate that he was endeavoring to set up a resulting trust in Kuenzel and a constructive trust in Dill, or other trust relationships; that he never pleaded an agency, and that the finding that Kuenzel bought as the agent of Cowden is so at variance as to warrant a reversal. Authorities are cited to the effect that the failure of the court to find on material facts in issue has been found to be sufficient ground for reversal on appeal by a party prejudiced thereby.

Appellant relies upon the text in 3 Am.Jur. 660, for this rule. The authority cited, however, proceeds to show that the rule is not applied where the complaining party has not suffered detriment from the lack of the finding, and proceeds further as follows:

"Accordingly, failure to find upon all the issue in the case does not require reversal, if the findings made cover all the essential matters pleaded, if the facts found are determinative by necessary inference of the facts not expressly found, if the circumstances of the case are such that the judgment can be regarded as supplying the omitted finding, if the findings made are sufficient to sustain the judgment or decree and the evidence would not have justified a finding on the issue in question in favor of the complaining party, or if the finding would necessarily have been prejudicial to him, or if the findings made necessarily require that judgment be rendered against the appellant, even though it be assumed that the facts not found would have been found in his favor."

It would appear in any event that Dill is not in position to benefit by the application of the rule asserted by him. Instead of going to trial upon simple pleadings whereunder each party alleged ownership and right of possession in himself and denied similar claims made by the other, the parties elected to plead their probative facts, as well as many other facts entirely alien to the issue, in the greatest of detail and particularity. We should not of course deny to appellant the right to take advantage of anything appearing in the pleadings of the respondent Cowden. In the absence of a transcript of the testimony, however, we have no way of knowing what transpired at the trial. Every trial lawyer knows that in a hundred ways the nature of the trial itself is influenced by things that transpire—in objections to testimony, in specific waivers of such objections, in colloquies between counsel and between the court and counsel, in statements that amount to stipulations, in statements that narrow the issues, in the examination and cross-examination of the parties which often develops facts directly contrary to their own pleadings, in admissions, in absolute refutation by competent evidence of the testimony of some particular witness. It is

clear that the trial court concluded that it had sufficient evidence before it to find that Dill purchased with full knowledge of Cowden's rights. No authority has been cited, and we doubt that any could be found, in support of the contention, in the absence of a transcript of the proceedings, that the references in Cowden's answer and cross-complaint to a breach of trust by Dill and Kuenzel precluded the court from finding that Kuenzel was Cowden's agent, and that Dill knew it.

■ Constant reference is made by appellant in his brief in support of this point to the facts in the case—whether appearing from respondent's own pleadings or from one or more of the exhibits, or from the deposition of Kuenzel. We must reject all claim of such support in the absence of the entire testimony. Fragments of evidence in the record in such a case are meaningless without the entire evidence.

■ (2) Error is claimed because Cowden "is not entitled to relief in a court of equity, not being able to come into such court with clean hands." This has reference to his pleading of the fact that he took title in the name of Kuenzel because the latter's company had "a Government P-56" and so was entitled to purchase the machinery in question. The reference is apparently to the fact that the country was operating under war conditions, and that persons were required to have certain priorities under government regulations before they could buy items of this kind. Again, this court is in no position to consider that situation without the transcript. We do not know what the regulations were, nor do we know that there was anything culpable in the situation. Some of the exhibits, as well as the pleadings, indicate extensive relations between Cowden and Kuenzel whereunder it might conceivably have been entirely proper for Cowden to purchase through Kuenzel's company. The same applies to appellant's contention that Cowden is precluded from denying Kuenzel's authority to sell under the theory that a resulting trust cannot ordinarily

arise from acts contraray to public policy or statute.

■ (3) It is further claimed that Cowden was estopped to deny Dill's title because he had clothed Kuenzel with indicia of ownership. But the court found that Dill purchased with full notice and knowledge, and appellant does not claim insufficiency of evidence. Even if he did, the evidence is not before us, nor did he move for a new trial.

■ (4) It is further claimed that the lower court was in error in ordering the property returned to Cowden, and in addition thereto, awarding Cowden $560 damages by reason of his having lost a sale of part of the very property that was returned to him by the judgment. It is possible that this contention has merit, but in the absence of the testimony we cannot say whether it has or has not. The authorities rejecting lost profits as a measure of damages and the authorities requiring an election by one defrauded either to accept the situation and recover his damages or repudiate the transaction and seek to be placed in status quo, can have no application without a knowledge of the facts that were presented to the trial court.

The foregoing references to the lack of the transcript are not made in disregard of appellant's repeated assurances that he is relying upon the pleadings, and not upon the evidence. However, appellant's contentions constantly run afoul of such lack, such as his assertion of facts appearing in his own pleading.

We have carefully considered all other points raised by appellant in his briefs and oral argument, but find them without merit. We have also considered all of the authorities cited by him, but find nothing in them not. in accord with the conclusions reached.

Appellant relies, among other things, upon the opinion and decision of this court denying respondent's motions to strike the bill of exceptions, to strike the judgment roll and to dismiss the appeal. Monitor Pipe and Steel Company v. Flanigan Warehouse Company, 63 Nev. 449,

172 P.2d 846.   However, we find nothing in the opinion referred to sustaining any of the contentions made.

The judgment is affirmed with costs.